UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES - GENERAL


| Case No.: | CV 17-02783-AB (JEMx) | Date: | August 2, 2017 |
|---|---|---|---|

| Title: | *David Lacayo v. Seterus, Inc., et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] Order GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss**

Before the Court is Defendants Seterus, Inc. ("Seterus") and Federal National Mortgage Association's ("Fannie Mae") (collectively "Defendants") Motion to Dismiss Plaintiff David Lacayo's ("Plaintiff") complaint.  (Dkt. No. 7, Motion to Dismiss ("Mot.").)   Having considered the parties' arguments and the case file, the Court deemed this motion appropriate for resolution without oral argument and took the matter under submission.  (Dkt. No. 12.)   For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss Plaintiff's eleven claims.

## I.    BACKGROUND

On October 26, 2007, Plaintiff and his wife Mireya Bautista ("Bautista") obtained a mortgage loan in the amount of $408,500, and executed a note for the purchase of real property located at 20931 Dalton Avenue, Torrance, CA 90501 ("Subject Property"). (Dkt. No. 1, Compl. ¶¶ 16-17.)   The note, secured by Subject Property, was first held by First Guaranty Financial Corporation before it was transferred sometime thereafter to

Fannie Mae.   (*Id.* at ¶¶ 17-18.)   Between 2007 and 2012, Plaintiff fell behind on his payments and requested a loan modification.   (*Id.* at ¶ 19.)

On February 29, 2012, Seterus offered Plaintiff and Bautista a trial period plan, or "TPP," that required three timely payments ("2012 TPP").   Seterus promised to permanently modify the note in return.   (*Id.* at ¶¶ 19-20.)   Plaintiff alleges he and Bautista accepted the offer and fully complied with the terms of the agreement, but that Defendants failed to uphold their contractual obligation to modify the loan.   (*Id.* at ¶¶ 21, 26.)   On August 26, 2014, Plaintiff and Bautista sued Defendants in the Superior Court of California.   (*Id.* at ¶ 28.)   The parties settled the case in October of 2014, with Plaintiff agreeing to dismiss the case in exchange for a new loan modification review.   (*Id.* at ¶ 29.) Seterus gave Plaintiff and Bautista a new TPP offer on February 13, 2015 ("2015 Agreement").   (*Id.* at ¶ 30.)

The 2015 Agreement provides that if Plaintiff and Bautista make three timely trial payments in March, April, and May of 2015, "[they] will receive a loan modification with an interest rate of 4.125%, which will be fixed for the full term of [their] modified loan." (*Id.* at ¶ 32.)   Plaintiff alleges he relied on the 2015 Agreement and did not seek other foreclosure alternatives.   (*Id.* at ¶¶ 33, 73.)   Additionally, he claims he accepted Defendants' offer by making the three required payments on March 20, April 20, and May 5, 2015.   (*Id.* at ¶ 33.)

Yet, on November 9, 2016, Seterus sent Plaintiff a letter informing him Defendants denied the modification request because they had not received the "signed agreement and/or initial payment."   (*Id.* at ¶ 35.)   However, Plaintiff alleges, Defendants never gave him a document to sign.   (*Id.* at ¶ 36.)   Had they done so, Plaintiff contends he would have promptly signed and returned it because he had an interest in securing a loan modification.   (*Id.*)

On December 27, 2016, on behalf of Defendants, The Mortgage Law Firm, PLC ("MLF") recorded a Notice of Default and Election to Sell under Deed of Trust ("NOD") on the Subject Property.   (*Id.* at ¶ 39.)   MLF attached a Declaration of Borrower Contact and Due Diligence ("Declaration") to the NOD pursuant to California Civil Code § 2923.55.   (*Id.* at ¶ 41.)   The Declaration states Defendants' agent, Naomi Hernandez, attempted to contact Plaintiff on November 16, November 30, and December 1 of 2011, but was unsuccessful on each occasion.   (*Id.*at ¶ 42.)

Plaintiff, however, alleges he and Defendants had contact on multiple occasions between 2011 and December 27, 2016, the day the NOD was filed.   (*Id.*)   For that reason, Plaintiff claims the Declaration is false and deficient.   (*Id.* at ¶ 41.)   He further alleges Defendants acted fraudulently and made their promises in bad faith, never intending to

perform their obligations under the 2015 Agreement.  (*Id.* at ¶ 37.)   Plaintiff argues Defendants' actions constitute a willful breach of the 2015 Agreement and the NOD amounts to a unilateral repudiation of the contract.  (*Id.* at ¶¶ 38, 40.)   In light of the foregoing, Plaintiff alleges Defendants, in breach of the 2015 Agreement, are wrongfully foreclosing on Subject Property in violation of California Civil Code § 2924, *et seq*.  (*Id.* at ¶ 45.)

Plaintiff therefore asserts the following eleven claims for relief: (1) Breach of Contract; (2) Promissory Estoppel; (3) Breach of the Covenant of Good Faith and Fair Dealing; (4) Fraud; (5) Violation of California Civil Code § 2923.55; (6) Negligence; (7) Negligent Misrepresentation; (8) Violation of California's Rosenthal Fair Debt Collection Practices Act; (9) Cancellation of Instrument; (10) Violation of California Unfair Competition Law ("UCL") under Business & Professions Code § 17200, *et seq*.; and (11) Breach of Fiduciary Duty.   Defendants move to dismiss all of Plaintiff's claims.

## II.   LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks omitted).   The complaint must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.*   Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint."   *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   But a court is "not bound to accept as true a legal conclusion couched as a factual allegation."   *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).   To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Id.* at 663.   A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."   *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.

1988); *accord Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) ("A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal quotation marks omitted).

## B.  Request for Judicial Notice

Although the scope of review on a motion to dismiss is generally confined to the contents of the complaint, a court may consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).   Under Rule 201 of the Federal Rules of Evidence, a court may judicially notice "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."   Fed. R. Evid. 201.   Judicial notice is proper for reports and records of administrative bodies.   *See United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008).   Courts have also taken judicial notice of documents that are publically filed.   *See Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1057-58 (C.D. Cal. 2008) (granting request for judicial notice of documents recorded by the Los Angeles County Recorder's Office); *Fimbres v. Chapel Mortg. Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, at *3 (S.D. Cal. Nov. 20, 2009) (granting request for judicial notice of a deed of trust, notice of trustee's sale, and NOD because they were public record).

However, the Court may take judicial notice of the existence of such exhibits "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents."   *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008) (internal quotation marks omitted).   At the pleading stage, "[e]videntiary presumptions are inappropriate."   *Balderas v. Countrywide Bank, N.A.,* 664 F.3d 787, 790 (9th Cir. 2011) (quoting 5b Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Proc.* § 1357 (Supp. 2011)) (internal quotation marks omitted).   *See also Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. CV 14-01921 SI, 2014 WL 3897076, at *5 (N.D. Cal. Aug. 7, 2014) ("It is improper for a court to take judicial notice of an exhibit for the truth of the matters asserted therein.").

## III.   DISCUSSION

### A. Judicial Notice

Defendants request that the Court take judicial notice of ten exhibits.   The Court considers each document in turn.

First, Defendants request judicial notice of three exhibits attached to attorney Andrew Mase's declaration.   (Dkt. No. 7-1, Declaration of Andrew Mase ("Mase Decl.") ¶¶ 5-7, Ex. 1-3.)   Plaintiff refers extensively to two of these documents, the 2015 Agreement (Mase Decl. ¶ 5, Ex. 1), and the settlement agreement.   (*Id.* at ¶ 7, Ex. 3.) These documents are already incorporated by reference into the pleading, so the Court need not take judicial notice of them.   *See Ritchie*, 342 F.3d at 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").   Defendants also request judicial notice of a Uniform Borrower Assistance Form from 2014 that they allege Plaintiff completed as part of the loan modification process.   (Mase Decl. ¶ 6, Ex. 2.)   However, this document is not a public record and Plaintiff did not reference it in his complaint, such that judicial notice would be improper.   For these reasons, the Court **DENIES** Defendants' Request for Judicial Notice of the 2015 Agreement, the settlement agreement, and the Uniform Borrower Assistance Form attached to Andrew Mase's declaration.

Defendants also request judicial notice of seven additional exhibits, including two Chapter 13 Bankruptcy Petitions, a Loan Modification Agreement, two Notices of Default, an Order of Dismissal in a bankruptcy case, and an IRS Form 1040.   (Dkt. No. 7-2, Request for Judicial Notice ("RJN") ¶¶ 1-7, Ex. 1-7.)   First, Defendants request judicial notice of the 2016 NOD Plaintiff references in his complaint.   (*Id.* at ¶ 6, Ex. 6.)   It is thus already incorporated into the pleading by reference, and the Court need not take judicial notice of it.   It is, however, a public record independently subject to judicial notice. Additionally, the remaining six exhibits are public record (*Id.* at ¶¶ 1-5, 7, Ex. 1-5, 7), and they are also judicially noticeable.   *See Velazquez*, 605 F. Supp. 2d at 1057-58 (granting request for judicial notice of documents recorded by the Los Angeles County Recorder's Office); *Grant v. Aurora Loan Services, Inc.*, 736 F. Supp. 2d 1257, 1263 (C.D. Cal. 2010) ("Judicial notice is appropriate for records and reports of administrative bodies.") (internal quotation marks omitted).   The Court therefore **GRANTS** Defendants' Request for Judicial Notice of the seven exhibits attached to that request.   (*See* Dkt. No. 7-2, RJN.)

### B. The Statute of Limitations Regarding the 2012 TPP

Defendants argue the statute of limitation bars Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, and violation of California's Business and Professions Code.   (Mot. at 8, 24.)   California provides a four-year statute of limitations for written contracts for "[a]n action upon any contract, obligation or liability founded upon an instrument in writing."   Cal. Code Civ. P. § 337(1).   In addition, professional negligence claims are subject to a two-year statute of limitations.   Cal. Code Civ. P. § 339(1).

Plaintiff alleges that he entered into the first TPP ("2012 TPP") with Defendants in 2012, and the second TPP (2015 Agreement) in February of 2015.   (Compl. ¶¶ 19, 30.) Yet, Plaintiff filed this lawsuit in April of 2017.   Because the 2012 TPP is outside the scope of California's statute of limitations for actions regarding written contracts and professional negligence claims, the Court will consider Plaintiff's claims as they pertain to the 2015 Agreement only.

### C. Misjoinder of Parties

Next, Defendants argue Plaintiff's breach of contract, breach of the covenant of good faith and fair dealing and cancellation of instruments claims should be dismissed because Plaintiff failed to join Bautista, who is a co-borrower on the loan and is a party to the 2015 Agreement.   (Mot. at 3-4.)   Yet, Defendants themselves point out that according to Federal Rule of Civil Procedure 21, "[m]isjoinder of parties is not a ground for dismissing an action."   (*Id*. at 4.)   The Court therefore **DENIES** Defendants' motion to dismiss Plaintiff's first, third, and ninth claims on this basis.

### D. Material Misrepresentation of Plaintiff's Primary Residence

Defendants move to dismiss Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, violations of the California Civil Code and the UCL, and cancellation of instruments on the ground that documents from Plaintiff's bankruptcy proceeding and the 2015 Agreement "conclusively show that Plaintiff intentionally misrepresented the primary residence and owner occupied status of the Subject Property to Seterus."   (Mot. at 4.)

Specifically, Defendants claim Plaintiff listed the Subject Property as their primary residence in the 2015 Agreement, despite making contrary representations to the IRS and Bankruptcy Court.   Defendants contend this material misrepresentation is a clear violation of the terms of the 2015 Agreement, which thereby voids it.   (*Id.*)   According to Defendants, then, claims dependent on the enforceability of the 2015 Agreement are meritless.   But this argument depends on the Court's acceptance of the contents of the judicially-noticed documents—namely, the address Plaintiff listed as his primary address in the bankruptcy documents—as true, which the Court may not do at this stage of the proceedings.   *See Balderas*, 664 F.3d at 790.   Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's first, third, fifth, ninth, and tenth claims on this ground.

//

## E. Promissory Estoppel Claim

Defendants argue Plaintiff's promissory estoppel claim fails for the following reasons: (1) Plaintiff does not plead the facts essential to show a clear and unambiguous promise; (2) Plaintiff establishes a bargained-for exchange that precludes promissory estoppel; (3) the statute of frauds bars a promissory estoppel claim in this instance; and (4) the claim, as it pertains to Fannie Mae, warrants dismissal because Plaintiff has made no allegations against it.   (Mot. at 11-14.)

To survive a motion to dismiss, a plaintiff's promissory estoppel claim must contain allegations of a "clear and unambiguous promise, i.e., definite enough that a court can determine the scope of the duty."   *Maomanivong v. Nat'l City Mortg. Co.*, No. C-13-05433 DMR, 2015 WL 217347, at *5 (N.D. Cal. Jan. 15, 2015) (internal quotation marks omitted); *Griffin v. Green Tree Servicing, LLC*, NO. CV 14-09408 MMM (VBKx), 2015 WL 10059081, at *6 (C.D. Cal. Oct. 1, 2015).   Defendants argue that a "complaint fails to state a cause of action for promissory estoppel *unless* the plaintiff alleges the material terms of the loan allegedly promised."   (Mot. at 12.)   They list several material terms courts have looked to in determining whether a promise is clear and unambiguous: the identity of the lender, the amount of the loan, and the terms for repayment such as interest calculations and payment schedules.   (*Id.*(citing *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 891 (1976); *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 115 (1991)).)   Defendants argue Plaintiff has not pled these essential facts necessary to show a clear and unambiguous promise.   (Mot. at 12.)

Plaintiff alleges Defendants made a clear and unambiguous promise that, if he made the three timely payments required under the 2015 Agreement, "[he] [would] receive a loan modification with an interest rate of 4.125%, which will be fixed for the full term of [his] modified loan."   (Compl. ¶ 32.)   He claims the 2015 Agreement further states, "if [Seterus] determine[s] that the unpaid balance of [Plaintiff's] mortgage is more than 115% of the value of [his] home, [he] will be eligible to have up to 30% of [his] principal balance deferred."   (*Id.*)   Furthermore, the 2015 Agreement, attached to the Declaration Defendants requested judicial notice of, contains the very material terms Defendants claim courts find indicative of a clear and unambiguous promise.   (*See* Mase Decl. ¶ 5, Ex. 1.) Specifically, the 2015 Agreement provides the identity of the servicer (Seterus), the borrower (Plaintiff and Bautista), and the owner of the loan (Fannie Mae).   (*Id.*)   It also includes the terms for repayment, including the number of required payments, the amount of each payment, the date payments were due, and the where payments must be sent.   (*Id.*) In addition to the terms Plaintiff alleges in his complaint about the modification (*see* Compl. ¶ 32), the 2015 Agreement states "[Seterus] will not proceed to foreclosure sale during the trial period, provided [Plaintiff] [complies] with the terms of the Trial Period Plan."   (Mase Decl. ¶ 5, Ex. 1.)   Lastly, the 2015 Agreement explicitly provides that,

"[t]he terms of [the] offer are accepted and the terms of [Plaintiff's] Trial Period Plan are effective on the day [Plaintiff] make[s] [his] first trial period payment, provided [he] [has] paid it on or before March 31, 2015." (*Id.*) Plaintiff claims that, in reasonable reliance on Defendants' promise, he accepted the offer by making the required payments, thereby fulfilling his duties and obligations under the 2015 Agreement. (Compl. ¶ 33.) Yet, Plaintiff alleges Defendants still denied Plaintiff a loan modification, and he now risks losing the Subject Property. (*Id.* at ¶ 73.) These allegations thus demonstrate Defendants made a clear and unambiguous promise to Plaintiff and are sufficiently specific to support a claim for promissory estoppel.

Second, Defendants argue because Plaintiff has already alleged there was an enforceable contract, he cannot also seek relief for promissory estoppel. (Mot. at 11-12.) Plaintiff claims Defendants made a clear and unambiguous promise to modify his loan if he made the required payments, and that he suffered damages from reasonably relying on that promise. (*Id.* at ¶¶ 44, 54, 63-64.) Although it is true Plaintiff may not recover on both a breach of contract claim and a promissory estoppel claim for the same promise, *see Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1418-1420 (1996), "[w]hen a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations." *Mendoza v. Continental Sales Co.*, 140 Cal. App. 4th 1395, 1402 (2006). Thus, Plaintiff is not precluded from asserting a claim for promissory estoppel and breach of contract at this stage of the litigation.

Next, Defendants argue the statute of frauds bars Plaintiff's promissory estoppel claim because the purported promise to modify the loan is not evidenced in writing. (Mot. at 14.) However, in alleging a claim for promissory estoppel, Plaintiff solely refers to the 2015 Agreement, which is written. (*See* Compl. ¶¶ 65-75.) He does not allege that Defendants made an oral promise, as Defendants suggest, that would subject this claim to dismissal under the statute of frauds. (*See* Compl. ¶¶ 30, 31, 33.)

Lastly, Defendants argue Plaintiff has not alleged there was an agency relationship between Seterus and Fannie Mae such that Fannie Mae would be liable for the acts of its agent. (Mot. at 14.) Courts have traditionally held that "an allegation of agency is an allegation of ultimate fact and is, of itself, sufficient to avoid a demurrer." *Garton v. Title Ins. & Trust Co.*, 106 Cal. App. 3d 365, 375 (1980) (finding it sufficient that plaintiffs claimed the defendants were agents and employees of one another and were acting within the scope of their agency). However, "where a plaintiff alleges that her broker is the agent of her lender, she must allege more than conclusory allegations . . . [because] as a matter of law, a broker is the agent of the borrower not the lender." *Hines v. Wells Fargo Home Mortg., Inc.*, No. 2:14-CV-01386 JAM-KJN, 2015 WL 351818, at *4 (E.D. Cal. Jan. 26, 2015) (citing *Abels v. Bank of Am., N.A.*, No. 11-CV-208 YGR, 2012 WL 691790, at *7

(N.D. Cal. Mar. 2, 2012) (citation omitted).

Plaintiff argues Fannie Mae is the beneficiary of the Deed of Trust and Seterus is its agent in matters related to the Deed of Trust, and that accordingly, any liability on the part of Seterus also accrues to Fannie Mae. (Dkt. No. 9, Opp'n at 13.) But Plaintiff simply alleges Seterus and Fannie Mae engaged in the same conduct, and these allegations are not sufficient to establish an agency relationship. *See Bhinder v. Bank of Am., N.A.*, No. 2:13-cv-00216-GEB-CKD, 2013 WL 4010583, at \*2 (E.D. Cal. Aug. 5, 2013) (holding a claim that asserted the broker was the lender's "agent" is not enough to allege an agency relationship). Plaintiff fails to "allege facts demonstrating the principal's control over its agent." *Imageline, Inc. v. Cafepress.com, Inc., et al.*, No. CV 10-9794 PSG (MANx), 2011 WL 1322525, at \*4 (C.D. Cal. Apr. 6, 2011).

Finally, Defendants point out that Plaintiff did not respond to its motion to dismiss the promissory estoppel claim, which the Court may deem as "consent to the granting or denial of the motion[.]" C.D. Cal. L.R. 7-12. Although Plaintiff timely filed his opposition to Defendants' motion, he failed to address Defendants' arguments regarding this claim. For this reason, and because Plaintiff does not sufficiently allege an agency relationship between Defendants, the Court therefore **GRANTS** Defendant's motion as to Plaintiff's promissory estoppel claim.

### F. Fraud and Negligent Misrepresentation Claim

Defendants argue Plaintiff's claim for fraud fails because (1) Plaintiff fails to plead his claim with the required level of specificity under Federal Rule of Civil Procedure 9(b), and (2) Plaintiff fails to allege Defendants misrepresented a past or existing material fact. (Mot. at 14-15.) Defendants also argue Plaintiff's claim for negligent misrepresentation fails because (1) Plaintiff does not allege facts sufficient to establish Defendants owed him a duty of care, and, (2) Plaintiff does not allege Defendants misrepresented a past or existing material fact. (*Id.* at 18-21.)

Federal Rule of Civil Procedure 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Although conditions of an individual's mind such as malice, intent or knowledge may be alleged generally, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).

Plaintiff pleads his fraud claim with sufficient specificity. He claims Defendants offered him and Bautista a loan modification (the 2015 Agreement) on February 13, 2015. (Mase Decl. ¶ 5, Ex. 1.) It states that "[Seterus] will not proceed to foreclosure sale during

the trial period, provided [Plaintiff] [complies] with the terms of the Trial Period Plan." (*Id.*)  Plaintiff alleges after he made the three required payments, thus fully performing under the terms of the 2015 Agreement, Defendants refused to provide him with the promised loan modification.  (Compl. ¶ 99.)  In fact, he claims Defendants entered into the 2015 Agreement never intending to fulfill their promise to permanently modify his loan, and instead, intentionally dragged him through the modification process to secure interest in Subject Property in order to receive benefits of the appreciating home value. (*Id.* at ¶¶ 102, 104.)  These allegations satisfy the "who, what, when, where, and how" requirement for fraud pleadings.  Thus, Plaintiff's claim is pled with sufficient specificity.

Next, Defendant argues Plaintiff's negligent misrepresentation claim fails because Plaintiff failed to establish Defendants owed him a duty of care.  (Mot. at 18-19.) However, "[t]he elements of a cause of action for negligent misrepresentation are the same as those of a claim for fraud, with the exception that the defendant need not actually know the representation is false."  *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).  Thus, to plead a claim for negligent misrepresentation, there must be: (1) a misrepresentation of a past or existing material fact, (2) no reasonable grounds for believing the fact to be true, (3) intent to induce another person's reliance on the misrepresented fact, "(4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed," and (5) damages.  *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).  Plaintiff need not establish Defendants owed him a duty of care when pleading a negligent misrepresentation claim.

Lastly, Defendants argue Plaintiff fails to assert they misrepresented a past or existing material fact when pleading his fraud and negligent misrepresentation claims. Defendants assert that intentional misrepresentation claims involving future events or occurrences are not actionable.  (Mot. at 14-15.)  They claim the statement in the 2015 Agreement that "Seterus and Federal *would* permanently modify Plaintiff's loan" is a representation of future conduct, and thus cannot support Plaintiff's fraud or negligent misrepresentation claims.  (Mot. at 15.)  Defendants cite to *Aguinaldo v. Ocwen Loan Servicing, LLC* to support their argument.  No. 5:12-CV-01393 EJD, 2012 WL 3835080, at *4 (N.D. Sept. 4, 2012).

However, the court in *Aguinaldo* explicitly stated that, "[u]nder California law, a promise made without intention to perform may give rise to a claim of deceit, which is actionable fraud."  *Id.*  Though "promises that are conditional are less likely to form the basis of a fraud claim without a showing that the conditions have been met," *id.*, Plaintiff alleges here the conditions were satisfied.  Unlike in *Aguinaldo*, Plaintiff has alleged he and Bautista fulfilled their obligations under the 2015 Agreement, and even provides copies of checks they sent to Defendants.  (Compl. ¶ 33, Ex. B.)  Plaintiff also specifically claims Defendants never intended to perform their obligations at the time they

entered into the 2015 Agreement.   (*Id.* at ¶ 37.)   *See Aguinaldo*, 2012 WL 3835080, at \*4 ("Broken promises may be actionable as a fraud, but the plaintiff must allege with specificity that the promisor did not intend to perform at the time the promise was made.").

In fact, the California Court of Appeal in *Bushell v. J.P.Morgan Chase Bank, N.A.*, affirmed the lower court's decision to deny a demurrer analogous to the motion at hand. 220 Cal. App. 4th 915, 929 (2013).   There the plaintiff alleged his TPP with Chase stated "[a]s long as [plaintiffs] comply with the terms of the [TPP], [Chase] will *not start . . .* foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started."   *Id.* at 930.   The plaintiff also claimed although he complied with the terms of the TPP and made the required payments, Chase deceptively issued a notice of trustee's sale to foreclose for its own financial gain.   *Id.*   The court in *Bushell* ultimately held the plaintiff sufficiently pled a claim for fraud, and the Court of Appeal affirmed that holding. *Id.*

Here, the 2015 Agreement provides that if Plaintiff makes the three required payments, "[he] [will] receive a loan modification" and "[Seterus] will not proceed to foreclosure sale during the trial period, provided [Plaintiff] [complies] with the terms of the Trial Period Plan."   (Mase Decl. ¶ 5, Ex. 1.)   Plaintiff claims Defendants contradicted these statements when they denied him a loan modification and commenced foreclosure proceedings, despite the fact he had made the required payments.   (Compl. ¶¶ 98-99, 102.) Plaintiff argues Defendants made intentional misrepresentations because they never intended to fulfill their obligations under the 2015 Agreement.   (*Id.* at ¶ 102.)   He further claims their "true goal was to deny Plaintiff's loan modification while maximizing bank fees and interest, wait for the housing market to increase since 2011, and sell Plaintiff's property at a profit."   (*Id.* at ¶ 103.)   Plaintiff has thus alleged sufficient facts to support his claim that Defendants intentionally and fraudulently deceived him into thinking he could be approved for a loan modification.   (*Id.* at ¶ 102.)

Plaintiff alleges the same facts to support his negligent misrepresentation claim. (*Id.* at ¶¶ 130-138.)   For the same reasons stated above, the Court also considers his negligent misrepresentation claim sufficiently pled.   *Neilson*, 290 F. Supp. 2d at 1141 ("The elements of a cause of action for negligent misrepresentation are the same as those of a claim for fraud, with the exception that the defendant need not actually know the representation is false [with fraud claims]."); *Mendoza*, 140 Cal. App. 4th at 1402 ("When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations.").

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's fraud and negligent misrepresentation claims.

## G. California Civil Code § 2923.55 Claim

Defendants allege Plaintiff's claim for violation of California Civil Code § 2923.55 fails because the NOD contains the declaration the code requires.   (Mot. at 16-18.) Section 2923.55 requires a NOD to "include a declaration stating that the mortgage, beneficiary or authorized agent contacted the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."   (Compl. ¶ 117.)   Section 2923.55(f) of the California Civil Code also provides in pertinent part:

[a] …For the purposes of this section, "due diligence" shall require and mean all of the following:

(1)   A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2)

(A)   After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

Cal. Civ. Code § 2923.55.

Mortgage servicers must not only file the declaration, but the contents must also be truthful.  *Intengan v. BAC Home Loans Servicing LP*, 214 Cal. App. 4th 1047, 1057 (2013) ("[C]ivil Code section 2923.5 requires not only that a declaration of compliance be attached to the notice of default, but that the bank actually perform the underlying acts."). District courts have found it sufficient that at the pleading stage that the plaintiff allege he "received no phone calls, phone messages, or letters via first class or certified mail either before or after the Notice of Default was recorded."  *Argueta v. J.P.Morgan Chase*, 787 F. Supp. 2d 1099, 1107 (E.D. Cal. 2011).

Here, Plaintiff alleges Hernandez's declaration stating no contact was made is untruthful because he and Defendants had contact on numerous occasions between 2011 and December 27, 2016, the day the NOD was filed.  (Compl. ¶¶ 41-42.)   If Plaintiff's allegations are true, the representations in Hernandez's declaration would be inaccurate. Thus, Plaintiff has sufficiently alleged that Defendants violated § 2923.55 of California Civil Code, and the Court therefore **DENIES** Defendants' motion to dismiss this claim.

## H. Negligence and Breach of Fiduciary Duty Claims

Defendants move to dismiss Plaintiff's negligence and breach of fiduciary duty claims on the ground that Plaintiff cannot show Defendants owe him a duty of care. (Mot. at 18-19, 23.) To state a claim for negligence Plaintiff must allege Defendants owed him a duty of care, and to plead a breach of fiduciary duty, Plaintiff must allege an existing fiduciary relationship. *Knight v. Aqui*, 966 F. Supp. 2d 989, 996 (N.D. Cal. 2013).

Under California law, "a financial institution [generally] owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096-1097 (1991). However, the court in *Nymark* cited to six factors set forth in *Biakanja v. Irving* that compel courts to impose a duty of care onto lenders:

[(1)] the extent to which the transaction was intended to affect the plaintiff, [(2)] the foreseeability of harm to him, [(3)] the degree of certainty that the plaintiff suffered injury, [(4)] the closeness of the connection between the defendant's conduct, and the injury suffered, [(5)] the moral blame attached to the defendant's conduct, and [(6)] the policy of preventing future harm.

49 Cal. 2d 647, 650 (1959). California's state and federal district courts are split as to whether the factors discussed in *Nymark* and *Biakanja* favor imposing a duty on a lender who modifies loans. *See Carbajal v. Wells Fargo Bank, N.A.*, No. CV 14-7851 PSG PLAX, 2015 WL 2454054, at *4 (C.D. Cal. Apr. 10, 2015) ("[W]hile courts agree that lenders do not owe a duty to offer or approve a loan modification, they disagree as to whether a lender owes a duty of care in the review of applications once it has agreed to consider them."). There are two California Court of Appeal decisions that district courts generally choose between in determining a duty of care for lenders reviewing loan modifications: *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67 (2013), wherein the court held a lender does not have a common law duty to "offer, consider, or approve a loan modification," or *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 948 (2014), wherein the court held a lender has a duty of reasonable care when they "undertak[e] to review a loan for potential modification."

The court in *Alvarez* held that lenders have a duty to use reasonable care when processing and handling loan modification applications. *Alvarez*, 228 Cal. App. 4th at 948-951. The court in *Lueras*, on the other hand, "conclude[d] [that] a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money[,]" and ultimately held that "plaintiff's lender and servicer did not have a common law duty of care to offer, *consider*, or approve a loan modification, or to offer [plaintiff] alternatives to foreclosure." *Roberts v. Wells*

*Fargo, N.A.*, No. CV 16-476 PSG (GJSx), 2016 WL 7469625, at *4 (C.D. Cal. May 17, 2016) (citing *Lueras*, 221 Cal. App. 4th at 67) (alterations in original).   Thus, the court in *Lueras* held that a lender's mishandling of loan applications does not fall outside their conventional role as a lender.

Although the California Supreme Court has yet to speak on this issue, federal courts in this district have agreed with the reasoning set forth in *Lueras*.   *See Roberts*, 2016 WL 7469625, at *5; *Odle v. MGC Mortgage Inc.*, No. CV 15-05019 DDP (JCx), 2016 WL 5661832, at 5* (C.D. Cal. Sept. 29, 2016); *Villasenor v. Green Tree Servicing, LLC*, No. CV 15-01689 MMM (DTBx), 2015 WL 12732899, at *7 (C.D. Cal. Nov. 9, 2015); *Bassam v. Bank of Am.*, No. CV 15-00587 MMM (FFMx), 2015 WL 12697873, at *9 (C.D. Cal. Nov. 3, 2015); *Griffin*, 2015WL 10059081, at *14 ("The court agrees with the California Court of Appeal in *Lueras* and the Ninth Circuit in *Benson* and *Deschaine* that there is no principled way to distinguish the process of applying for an original loan from the process of applying for a loan modification; both involve activities clearly within the conventional role of mere lenders of money.").   The Court agrees with the Ninth Circuit, California Court of Appeal, and federal courts in this district, and will therefore apply the holding of *Lueras* and its analysis of the *Biakanja* factors to this case.

Here, Plaintiff alleges Defendants acted as his lenders and/or servicers in reviewing his permanent loan modification, and therefore owed him a duty to exercise reasonable care.   (Compl. ¶ 123.)   According to Plaintiff, Defendants breached that duty when they (1) reneged on their promise to approve his loan modification and abstain from foreclosing on Subject Property if he made his payments under the 2015 Agreement, (2) failed to include a true and correct NOD Declaration, and (3) initiated foreclosure proceedings in violation of public policy.   (*Id.* at ¶ 124.)

Collecting payments, initiating foreclosure proceedings, and, handling, processing, and determining loan modification applications all fall within the traditional role of money lenders.   Plaintiff has not alleged facts to suggest Defendants went beyond the scope of this role when processing Plaintiff's loan modification application.   The Court therefore finds Plaintiff's factual allegations insufficient to support his negligence and breach of fiduciary duty claims, and the claims must be dismissed.   The Court **GRANTS** Defendants' motion.

## I.   Rosenthal Fair Debt Collection Practices Act Claim

Defendants argue Plaintiff's allegations do not constitute a violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act").   (Mot. at 21-23.)   The statute requires that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [the federal Fair Debt Collection Practices Act

("FDCPA")."   Cal. Civ. Code § 1788.17.   The FDCPA prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt."   15. U.S.C. § 1692e.   While the Rosenthal Act defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection," Cal. Civ. Code § 1788.2(c), courts have held that "[w]here the claim arises out of debt collection activities 'beyond the scope of the ordinary foreclosure process,'…a remedy may be available under the Rosenthal Act."   *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at \*19 (N.D. Cal. Jan. 3, 2011) (internal quotation marks omitted).

The same standard applies to claims for violations of the Rosenthal Act and the FDCPA: "[i]f the least sophisticated debtor would likely be misled by a communication from a debt collector, the debt collector has violated the Act."   *Herrera v. LCS Fin. Services. Corp.*, No. C09-02843 TEH, 2009 WL 5062192, at \*4 (N.D. Cal. Dec. 22, 2009) (internal quotation marks omitted).   A plaintiff may have a claim for a Rosenthal Act violation on the grounds that communications between the plaintiff and mortgage servicer were deceptive or misleading.   *See Reyes*, 2011 WL 30759, at \*19.

Here Plaintiff alleges Defendants violated the Rosenthal Act when they made the false, deceptive, and misleading promise to permanently modify his loan if he complied with the 2015 Agreement.   (Compl. ¶¶ 37,102, 147, 148.)   Specifically, Plaintiff claims this promise deceived him into making payments under the 2015 Agreement and deterred him from seeking other foreclosure alternatives.   (*Id.* at ¶ 33.)   Lastly, Plaintiff alleges his reliance on Defendants' promise was reasonable.   (*Id.* at ¶¶ 70-72.)

Taking Plaintiff's allegations as true, the Court agrees.   The 2015 Agreement states "if [Plaintiff] successfully complete[s] the Trial Period Plan by making the required payments, [he] will receive a loan modification.   (Mase Decl. ¶ 5, Ex. 1.)   Plaintiff claims although he fulfilled his obligations under the 2015 Agreement, he was not given a loan modification.   (Compl. ¶¶ 33-35.)   Under such circumstances, it is reasonable that "the least sophisticated debtor" would be misled by Defendants' promise.   For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's Rosenthal Act claim.

## J.  Cancellation of Instruments Claim

Defendants move to dismiss Plaintiff's cancellation of instruments claim because Plaintiff has not tendered the outstanding balance due under his loan.   (Mot. at 21-22.) Under California law, to plead a claim for cancellation of instruments, a plaintiff must, among other things, "allege facts sufficient to show tender in the amount of [his] [or] her indebtedness or a valid excuse to the tender requirement."   *Morgan v. Aurora Loan*

*Services, LLC*, 646 Fed. App'x 546, 551 (9th Cir. 2016).   A debtor is generally required to restore "to the defendant any value the plaintiff received from the transaction."   *Kimball v. Flagstar Bank F.S.B.*, 881 F. Supp. 2d 1209, 1225 (S.D. Cal. 2012).   There are four exceptions to the "tender rule": (1) if the borrower is attacking the validity of the underlying debt, (2) when the moving party seeking to set aside the sale has a counterclaim against the beneficiary, (3) where it would be inequitable to require tender from the party challenging the sale, and (4) when the trustor does not need to rely on equity as a basis for attacking the deed because the deed is facially void.   *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112-113 (2011); *Watson v. Bank of Am., N.A.*, No. 16cv513-GPC (MDD), 2016 WL 3552061, at *23 (S.D. Cal. June 30, 2016).

Many federal courts have "explicitly held the tender rule only applies in cases seeking to set aside a completed sale, rather than an action seeking to prevent a sale in the first place."   *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 969 (N.D. Cal. 2012). *See also Giannini v. Am. Home Mortg. Servicing, Inc.*, No. 11-04489 TEH, 2012 WL 298254, at *3 (N.D. Cal. Feb. 1, 2012) ("While it is sensible to require tender following a flawed sale—where irregularities in the sale are harmless unless the borrower has made full tender—to do so prior to sale, where any harm may yet be preventable, is not."); *Vissuet v. Indymac Mortg. Services*, No. 09-CV-2321-IEG (CAB), 2010 WL 1031013, at *2 (S.D. Cal. March 19, 2010) (finding that the California tender requirement is applicable only when a plaintiff attempts to set aside a foreclosure sale on the basis of an irregularity after the sale).

The 2015 Agreement states, "if [Plaintiff] successfully complete[s] the Trial Period Plan by making the required payments, [he] will receive a loan modification with an interest rate of 4.125%, which will be fixed for the full term of [Plaintiff's] modified loan." (Mase Decl. ¶ 5, Ex. 1.)   Plaintiff claims he fully complied with the 2015 Agreement, and for that reason, any foreclosure proceedings initiated against the Subject Property are invalid.   (Compl. at ¶ 45.)   Because a sale has yet to be completed in this case, the Court concludes it would be inequitable to apply the tender rule when Plaintiff contests the very legitimacy of the foreclosure proceedings.   *See Barrionuevo*, 885 F. Supp. 2d at 969 ("[The] Barrionuevos have a fairly strong argument that tender—or at least full tender—should not be required because they are contesting not only irregularities in sale notice or procedure, but the validity of the foreclosure in the first place.   Courts have declined to require tender in just such circumstances."); *Sacchi v. Mortg. Elec. Registration Sys., Inc.*, No. CV 11-1658 AHM (CWX), 2011 WL 2533029, at *9-10 (C.D. Cal. June 24, 2011) (making an exception to the tender rule in a wrongful foreclosure claim because it "would permit entities to foreclose on properties with impunity").   Plaintiff has sufficiently alleged Seterus was obligated to fulfill its promise to permanently modify his loan, and that foreclosure proceedings should not have been initiated.   Thus, Plaintiff should not have to tender the outstanding balance on his loan to seek redress.

The Court hereby **DENIES** Defendants' motion to dismiss Plaintiff's cancellation of instruments claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.   Finding the pleading deficiencies discussed above could reasonably be cured by amendment, the Court also grants Plaintiff leave to amend the complaint.   Any amended pleading shall be filed within twenty-one days of this order or the dismissal shall be with prejudice.

**IT IS SO ORDERED.**